UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————X

| | |
|---|---|
| TANESHA WASHINGTON, | Civ. No. 1:15-cv-2127 (GBD) |
| Plaintiff, | **AMENDED COMPLAINT** |
| — against — | **Jury Trial Demanded** |
| CARCO GROUP, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; and INNOVATIVE ENTERPRISES, INC., | |
| Defendants. | |

———————————————————————————X

Plaintiff Tanesha Washington ("Ms. Washington" or "Plaintiff"), by and through her attorneys, Youth Represent and Beranbaum Menken LLP, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action against Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), Defendant CARCO GROUP INC. ("Carco"), and Defendant INNOVATIVE ENTERPRISES, INC. ("Innovative"), collectively "Defendants," for violations of both the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380 *et seq.* ("NY-FCRA") (collectively, "FCRAs").

2.      Plaintiff Tanesha Washington lost an employment opportunity because Defendants unlawfully and inaccurately reported information that linked Ms. Washington with two pending criminal charges for gun possession. In fact, Ms. Washington has never been arrested or convicted of a crime. This complaint charges Defendants with failing to use reasonable procedures to ensure maximum possible accuracy of the information they report. This complaint

further charges Defendants for failure to follow strict procedures in reporting information of public record on Ms. Washington for employment purposes. Had either reasonable or strict procedures been used, such as inspecting the actual public record or a simple algorithm for a name and date of birth match, it would have been clear that the criminal information reported belonged to an entirely different individual. This complaint additionally charges Defendant Carco particularly with failing to notify Ms. Washington of her legal rights, failing to follow appropriate investigative procedures to ascertain whether the information was mistaken, failing to fully correct the mistake, and finally, reporting information known to be inaccurate.

3.      Defendants' unlawful business practices are precisely the types of practices and actions that the FCRA was enacted to prevent. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumers' right to privacy," FCRA § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. FCRA § 1681(b).

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred by FCRA § 1681(p) and 28 U.S.C. § 1331, for the claims brought under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* This Court has supplemental jurisdiction over the New York state claims, 28 U.S.C. § 1367(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

2

## PARTIES

6.      Plaintiff Tanesha Washington is a resident of New York, New York and a "consumer" as defined by the federal and New York Fair Credit Reporting Acts, FCRA § 1681a(c) and N.Y. Gen. Bus. Law § 380-a(b).

7.      Defendant Carco is a Delaware corporation with its principal place of business at 5000 Corporate Court, Suite 203, Holtsville, NY 11742. Carco is doing business in New York by providing or reselling to New York employers background check reports on prospective and current employees.

8.      Defendant Experian is an Ohio corporation duly authorized and qualified to do business in New York that has its principal place of business at 475 Anton Blvd., Costa Mesa, CA 92626-7036. Experian provides consumer reporting information to New York corporations and is doing business in New York with a New York office address at 1271 Avenue of the Americas, 45th Floor, New York, NY 10020.

9.      Defendant Innovative is a Virginia corporation with its principal place of business at 11824 Fishing Point Drive, Suite B, Newport News, VA 23606. Innovative provides consumer reporting information to New York corporations and is doing business in New York.

## FACTUAL ALLEGATIONS

**The Facts Pertaining to Defendants' Operations and Activities**

10.     The business of conducting consumer reports is frequently a collaboration of many different corporations and companies who, collectively, report a host of sensitive data on individuals. Plaintiff's case is such a situation.

11.     Defendant Carco is a national employment background screening corporation. Carco "engages in whole or in part in the practice of assembling or evaluating consumer credit

3

information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports" via a maintained database. FCRA § 1681a(f). As such, Carco is a "consumer reporting agency" ("CRA") that provides "consumer reports," as those terms are defined by FCRA §§ 1681a(f) and 1681a(d)1(B) and N.Y. Gen. Bus. Law § 380-a. In the instant case, Carco was the direct provider of the consumer report to a prospective employer. According to its website, Carco completes "over two million reports . . . annually." http://www.carcogroup.com/hr_solutions-employee-screening.php.

12.     Defendant Carco serves its employer customers, consumers who request copies of their background checks, and the general public using the company tagline "Better Decisions Through Accurate Information," and represents to the public that it has the expertise and experience to provide "peace-of-mind knowing our background checks include expert tracking, analysis and data verification." Finally, Carco asserts that, "to ensure accurate and complete findings of our employment screenings, we re-verify adverse information prior to dissemination." http://www.carcogroup.com/hr_solutions-employee-screening.php.

13.     To carry out its business activities and objectives, Carco conducts investigations and enters into contracts with various vendors, companies, and other CRAs who sell to Carco an array of consumer information that Carco compiles and sells to employers who are seeking to hire or make other employment decisions. Such vendors include other CRAs like Defendants Experian and Innovative.

14.     Defendant Experian is a global information services corporation. Experian "engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to

third parties, and … uses any means or facility of interstate commerce for the purpose of

preparing or furnishing consumer reports" via a maintained database. FCRA § 1681a(f). As such,

Experian is also a "consumer reporting agency" that provides "consumer reports," as those terms

are defined by FCRA §§ 1681a(f) and 1681a(d)1(B) and N.Y. Gen. Bus. Law § 380-a, to

employers, prospective employers, and other CRAs.

15.     Experian reports to its customers that they maintain a "data repository consisting

of over 600 million unique criminal records [which is the] largest electronically available criminal

records source in the country." According to Experian, access to this data helps "provide an

informed view of a consumer and allow their end clients to determine their trustworthiness [as]

criminal records are a crucial part in ensuring a safe and secure workplace and residence . . . ."

http://www.experian.com/consumer-information/public-records/public-records.html.

16.     To carry out its business activities and objectives, Experian enters into contracts

with various vendors, companies, and other CRAs who sell an array of consumer information to

employers who are seeking to hire or make other employment decisions. Such vendors include

other CRAs like Defendants Carco and Innovative.

17.     Defendant Innovative "engages in whole or in part in the practice of assembling or

evaluating consumer credit information or other information on consumers for the purpose of

furnishing consumer reports to third parties, and … uses any means or facility of interstate

commerce for the purpose of preparing or furnishing consumer reports" via a maintained

database. FCRA § 1681a(f). As such, Innovative is also a "consumer reporting agency" that

provides "consumer reports," as those terms are defined by FCRA §§ 1681a(f) and 1681a(d)1(B)

and N.Y. Gen. Bus. Law § 380-a, to employers, prospective employers, and other CRAs.

18.     Defendant Innovative, through a variety of services—including their "Innovative Data Solutions," "Innovative Verification Solutions," "DirectData Enterprise Solutions," "Court Record Verification Solutions," and "DataSurge"—report information and data relating to individuals' alleged criminal history. Innovative represents that they "leverage[] the fastest growing library of full data extraction sources in the industry to automate the collection of criminal court record information from available online sources," using "highly advanced matching and analysis algorithms." http://www.knowthefacts.com/service/ACE-ids/.

19.     To carry out its business activities and objectives, Innovative enters into contracts with various vendors, companies, and other CRAs who sell a range of consumer information to employers who are seeking to hire or make other employment decisions. Such vendors include other CRAs like Defendants Carco and Experian.

20.     Information that the Defendants each gather and assemble for sale to an employer or other party in connection with a consumer report include: credit report history, employment verification, educational history, foreign asset control verifications, social residential/address history with social security number and date of birth, and criminal database data.

21.     A match for criminal database data is often the most significant component of a background check because it may negatively impact a consumer's application for employment. As a result, both the FCRA and the NY-FCRA contain specific provisions that impose duties of special care that CRAs must take when reporting public records in connection with employment. FCRA § 1681k(a); N.Y. Gen. Bus. Law § 380-g.

22.     The FCRA requires all CRAs in the chain of information to know the purpose for which the information is being used. In Plaintiff's case, the FCRAs require each Defendant to know that the information was being gathered for employment purposes. FCRA § 1681e(a).

23.     When information is likely to have an adverse effect and is being used for employment purposes, CRAs must maintain "strict procedures" to ensure that the public information reported is complete and up-to-date, or in the alternative, provide the consumer, in this case Ms. Washington, with a specific notification of what is being reported against her "at the time" that the CRA provides the record to the employer. FCRA § 1681k(a); N.Y. Gen. Bus. Law § 380-g. Because no such pre-adverse effect report was provided to Ms. Washington, Defendants were required to maintain "strict procedures."

24.     In addition to the duty to maintain strict procedures in the absence of a pre-adverse effect notification, the FCRAs also requires all CRAs, regardless of the end user, to maintain "reasonable procedures to ensure maximum possible accuracy" of the information reported. FCRA § 1681e(b); N.Y. Gen. Bus. Law § 380-j(e).

25.     Carco's own CEO and President, as well as Carco's Vice President of Research, have outlined the danger of reporting criminal convictions without a "full name and all other available identifiers match." Best Practice Standards: The Proper Use of Criminal Records in Hiring, the Lawyers' Committee for Civil Rights Under Law, National H.I.R.E. Network, and National Workrights Institute, http://www.lawyerscommittee.org/admin/employment_discrimination/documents/files/Best-Practices-Standards-The-Proper-Use-of-Criminal-Records-in-Hiring.pdf, 2013, p.2. Carco officials were consultants for the report, which reflects the "professional views of the consultants and their companies." *Id.* at p. ii. The report stresses the importance of not just a name match, but also an additional identifier match. *Id.* at p.13. The document goes further by stressing that "any reliable report must search the records available from the courts in the county and/or state where the candidate resides," and while verification of records from the courts themselves involves

additional expense, "it is the only way that the employer can be sure that the Consumer Reporting Agency is complying with the Fair Credit Reporting Act, which requires that the agency 'maintain strict procedures.'" *Id.* at p.12.

26.     In this case, Defendants failed to maintain not only strict procedures, but reasonable procedures, as well. The final product, as demonstrated more fully below, was a consumer report riddled with damaging errors that mistakenly attributed another individual's criminal history to Ms. Washington, a job applicant who had a blemish-free record. Defendants' poor or non-existent matching processes and inadequate report preparation procedures fall far below either the "reasonable procedures" or "strict procedures" standards required by the FCRAs.

27.     Defendant Carco's non-compliance with the FCRAs extends beyond the collection of the consumer report data. Carco knowingly reported inaccurate information by stating that the "RECORD MATCHES ON THE FOLLOWING: Name, DOB." Carco failed to notify Ms. Washington of essential rights which may have enabled her to more quickly and accurately correct the errors. Carco wrongfully shifted the burden of investigating disputed matters onto the Plaintiff when the accuracy was disputed. And finally, once the disputed matters were finally resolved, Carco failed to appropriately expunge or delete the incorrect items.

**The Facts Pertaining to Plaintiff Tanesha Washington**

28.     From June 2012 to January 2013, Ms. Washington was a paid, full-time intern for Time Warner Inc. ("Time Warner"), working as a Technical Administrative Assistant for the Audio/Visual Technical Communications Team. This internship opportunity was the culmination of Ms. Washington's engagement in a one-year, intensive job training non-profit program that provides low-income young adults aged 18 to 24 with a combination of hands-on skill development, college credits, and corporate internships.

29.    Upon her successful completion of the job training program, followed by 8 months as an intern at Time Warner, Ms. Washington interviewed with Time Warner in February 2013. Time Warner offered her full-time employment with its Procurement Department in its New York City office. The offer was contingent on the results of a criminal background check.

30.    The position with the Procurement Department at Time Warner would have paid Ms. Washington $20 per hour at 40 hours per week, plus medical benefits, possible overtime pay, and opportunity for advancement.

31.    Ms. Washington was confident that the criminal background report would be clear because she had never been arrested for, charged with, or convicted of any crime. Ms. Washington excitedly told her family and friends about her first job in the corporate world.

32.    Time Warner then ordered a consumer report on Ms. Washington from Defendant Carco. On information and belief, Carco obtained data on Ms. Washington from Defendant Experian and Defendant Innovative. Following the collection of this data, on March 20, 2013, Defendant Carco sold to Time Warner an employment consumer report for Ms. Washington that contained approximately 5 pages of information, including information about Ms. Washington's credit history, her social security number, her address, employment and educational verification, and two bewildering, astonishingly inaccurate, and stigmatizing criminal records (the "March 20, 2013 Report"). A copy of the March 20, 2013 Report is attached hereto as Exhibit A.

33.    Over the course of the following month, Plaintiff discovered that the damning and inaccurate consumer report was a result of Defendants' collective and individual violations of the protections guaranteed by the FCRA and NY-FCRA.

34.    The criminal records reported in the March 20, 2013 consumer report, in fact, belonged to another individual, not Ms. Washington, as she has never had a criminal record of

any kind. As explained in more detail below, Defendants erroneously reported Ms. Washington as having a criminal record because they failed to use reasonable procedures to assure the maximum possible accuracy of the consumer report. Additionally, Defendants failed to use strict procedures to assure accurate public information reported for employment purposes. Had Defendants followed such duties, they would have discovered that such records did not belong to Ms. Washington, but to a different person, and would not have reported these records to her prospective employer.

35.    The March 20, 2013 Report begins with an "Investigative Summary," which lists the basic demographic data along with a summary of each investigated category. *See* Exhibit A. Each category is given a rating: "Clear," "Adverse," "Pending," "See Details," "Not Pursued," "Error" or Complete." This rating system allows Carco to express the degree of confidence they have in the accuracy of the information given for each area.

36.    The March 20, 2013 Report's first inaccuracy is found in the summary page, which listed Ms. Washington as having a "STATEWIDE, NY-FELONY / MISDEMEANOR," and designated her Status as "Adverse." The report defines the "Adverse" status as "discrepant or negative information," and confirms "the report component is complete."

37.    As to its next inaccuracy, the March 20, 2013 Report re-states Ms. Washington as having an "Adverse" status and "STATEWIDE, NY" "FELONY / MISDEMEANOR" on a subsequent page, and incongruously adds the name "Jemik McGill" to Ms. Washington's report.

38.    As to the "STATEWIDE, NY-FELONY / MISDEMEANOR" charge erroneously attributed to Ms. Washington, the March 13, 3013 Report compounded its error by providing the following details: "PL 265.01 01: 4th degree- Criminal possession of a weapon," with the disposition noted as "PROSECUTION PENDING," and an upcoming court date of "08/30/2013."

39.     Next, the report then ascribes, also mistakenly, yet another criminal charge to Ms. Washington: "PL 265.03 03: 2nd degree-Criminal possession of a weapon." Under the type of offense, "FELONY" is listed with a "08/30/2013" court date.

40.     Even though the March 20, 2013 Report's does not list  Ms. Washington's date of birth, and Ms. Washington's name clearly and noticeably does not match the name Jemik McGill, Carco's report stated that the "RECORD MATCHES ON THE FOLLOWING: Name, DOB."

41.     Time Warner, upon receiving Carco's March 20, 2013 Report erroneously setting forth Ms. Washington's "criminal history," informed Ms. Washington that it would not be able to hire her because she had a serious criminal history. Specifically, on March 28, 2013, Time Warner informed Ms. Washington that she had two open Criminal Possession of Weapon cases in Brooklyn, New York. This was the first time Ms. Washington was provided any information that adverse information had been reported on her criminal background check. At no prior point had Ms. Washington received notification from Defendants regarding the adverse effect of its consumer report provided to her prospective employer.

42.     Solely on the basis of the "adverse" report falsely indicating her criminal record, Time Warner rescinded its employment offer to Ms. Washington.

43.     Ms. Washington immediately informed Time Warner that it was in error and that she has never been arrested, let alone convicted, of any criminal charge. Time Warner told Ms. Washington that Carco would need to correct the erroneous criminal history information before it could move forward with employing her.

44.     The next day, March 29, 2013, Ms. Washington called Carco, and on a voicemail, gave her name, and social security number, and stated that there was a criminal record error on her report that had caused her to lose a job. Ms. Washington called Carco again on April 1, 2013,

and on April 2, 2013, leaving voicemails with the same information. Despite having left

numerous messages, Ms. Washington never received a return call from Carco.

45.     Ms. Washington then contacted the legal non-profit agency, Youth Represent, on

April 3, 2013, to assist her in correcting this error and obtaining the position with Time Warner.

Youth Represent immediately called Carco on April 3, 2013, and left a voicemail with "Ms.

Page" explaining the error and the need for immediate resolution. Youth Represent subsequently

contacted Carco and left messages on April 4, 2013, April 8, 2013, and April 9, 2013. Ms.

Washington received a letter from Carco, dated April 4, 2013 (the "April 4, 2013 Letter"),

informing her it  had "investigated your dispute regarding the completeness or accuracy of

information provided to Comcast [sic] specifically as it relates to your Social Security/Residence

History Report." A copy of the April 4, 2013 Letter is attached as Exhibit B. The letter further

states that Carco "contacted Innovative Data Solutions [Defendant Innovative] regarding the

information provided in our initial report" and that "all disputes regarding the Social

Security/Residence History Report must be addressed to the reporting agency and that

correspondence submitted to the agency must be done so in writing."

46.     On April 9, 2013, 11 days after Ms. Washington first called and left a message

with Carco, Phillip Smith, a representative of Carco, returned the call. Mr. Smith told Youth

Represent that some of the information Carco reported on Ms. Washington's record was provided

to Carco by Experian. Mr. Smith further explained that Experian would have to update the

incorrect information and that Ms. Washington or Youth Represent would have to contact

Experian directly to correct the matter since Experian was the source of the criminal record

match.

47.     Youth Represent telephoned Experian on April 16, 2013 and, in a conversation with "Edwina," informed her that there was an error on Ms. Washington's report and that Tanesha Washington and Jemik McGill were not the same person. Experian requested Ms. Washington's date of birth, Social Security number, and a faxed copy of Youth Represent's retainer with Ms. Washington. All requested documents were promptly provided to Experian.

48.     Experian, through its representative Edwina, told Youth Represent that once Experian corrected the error in its system, the corrected information would be provided to Defendant Innovative. According to the Carco representative, Defendant Innovative would have to receive a request for a new report from Defendant Carco, which could then, in turn, provide the corrected report to the employer.

49.  On information and belief, Experian had provided the faulty information regarding Plaintiff's alleged criminal record to Innovative. Innovative, in turn, without using reasonable, much less strict procedures, had transmitted the erroneous information regarding Ms. Washington to Carco.

50.     Ms. Washington received a letter from Carco, dated April 26, 2013 (the "April 26, 2013 Letter"). A copy of the April 26, 2013 letter is attached hereto as Exhibit C. The letter states "the disputed information has been removed from Ms. Washington's consumer report. The results are now clear." The letter then informs Ms. Washington to "please contact Time Warner Cable, Inc. for any inquiries regarding your current employment eligibility." *Id.* No other legal rights or remedies are outlined or provided in this letter.

51.     The April 26, 2013 Letter also attached an updated copy of the consumer report on Ms. Washington (the "April 26, 2013 Report"). A copy of the April 26, 2013 Report is attached hereto as Exhibit D. In the April 26, 2013 Report, Carco updated the criminal history section from

13

"adverse" to "clear," and the erroneous information regarding the two pending criminal gun possession cases were deleted. However, the name "Jemik McGill" was not deleted from Ms. Washington's report. This random and unassociated name of "Jemik McGill" still appears on Ms. Washington's report to this day.

52.     On or about May 1, 2013, Ms. Washington learned that her report was corrected. She immediately contacted Time Warner to inquire whether its previous employment offer had been reinstated. However, by the time Carco provided this partially corrected background report to Time Warner, the company had already filled the position and was unable to hire Ms. Washington.

53.     Any routine reference to, casual consideration of, or rudimentary inspection of the public records by a reasonable person or company would have revealed that there was an inaccurate match of data associated with Ms. Washington. Likewise, any simple computerized or automated cross-referencing of the data with Ms. Washington's personal identifying information would have revealed the mistake and, at a bare minimum, should have caused Defendants to conduct a further investigation.

54.     Defendants failed to use reasonable procedures to assure the maximum possible accuracy of the data found within the reports. Additionally, in providing public information for employment purposes, Defendants failed to use strict procedures to assure accuracy. Given the obvious difference between the names appearing on the reports, it appears that no one at Carco, Experian, or Innovative bothered to even cursorily glance at the data before passing it along. Had Defendants followed the most basic reasonable procedures, they would have quickly discovered that the criminal history information did not apply to Ms. Washington and the erroneous information would have never been reported to Time Warner.

14

55.     As a result of losing her job with Time Warner and being informed that she was associated with two Criminal Possession of a Weapon charges, Ms. Washington suffered severe emotional distress.

56.     As a result of Defendants' multiple violations of the FCRAs, Ms. Washington lost a job opportunity and remained without employment for a significant period of time and suffered a range of actual damages including lost wages and benefits, damage to her reputation, embarrassment, humiliation, and emotional and mental distress.

57.     With the loss of employment opportunity, Ms. Washington was forced to move out of her apartment and, despite attempts to secure a new apartment, she was forced live temporarily on the couches of friends and family until she was finally able to secure her own housing in February 2015.

58.  The stress and emotional distress of being associated with two open criminal gun possession matters, along with the resulting loss of employment and housing, caused Ms. Washington to have a public seizure on June 18, 2013 that required an ambulance to take her to Beth Israel Medical Center.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE
### MAXIMUM POSSIBLE ACCURACY
### FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)

59.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

60.     Defendants are a "consumer reporting agency" as defined by FCRA § 1681a(f).

61.     At all pertinent times, Plaintiff Washington was a "consumer" as defined by FCRA § 1681a(c).

62.     The background reports on Ms. Washington, and all data about her provided by Defendants, were "consumer reports," as the term is defined by the federal Fair Credit Reporting Act. FCRA § 1681a(d).

63.     Defendants violated FCRA § 1681e(b) because they failed to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's background report and the files on her that it published and maintained.

64.     Defendants' violations are willful, rendering Defendants liable for actual damages, punitive damages, and attorney's fees in an amount to be determined by the Court pursuant to FCRA § 1681n. Alternatively, Defendants were negligent, rendering Defendants liable for actual damages and attorney's fees pursuant to FCRA § 1681o.

65.     As a result of Defendants' violations of FCRA § 1681e(b), Ms. Washington suffered damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

**COUNT II**
**FAILURE TO MAINTAIN REASONABLE PROCEDURES TO**
**<u>ASSURE MAXIMUM POSSIBLE ACCURACY</u>**
**NY GEN. BUS. LAW § 380-j(e)**

66.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

67.     Defendants are a "consumer reporting agency" as defined by NY Gen. Bus. Law § 380-a(e).

68.     At all pertinent times, Plaintiff Washington was a "consumer" as defined by NY Gen. Bus. Law § 380-a(b).

16

69.     The background report on Ms. Washington and all other data provided about her by Defendants constituted "consumer reports," as the term is defined by NY Gen. Bus. Law § 380-a(c).

70.     Defendants violated NY Gen. Bus. Law § 380-j(e) because they failed to "maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates" in the preparation of Plaintiff's consumer report and the files about her that it published and maintained.

71.     Defendants' violations were willful, rendering Defendants liable for actual damages, punitive damages, and costs and reasonable attorneys' fees, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l. Alternatively, Defendants were negligent, rendering Defendants liable for actual damages and costs and reasonable attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 380-m.

72.     As a result of Defendants' violations of N.Y. Gen. Bus. Law § 380-j(e), Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

## COUNT III
## FAILURE TO MAINTAIN REASONABLE
## PROCEDURES OF PUBLIC RECORDS
## NY GEN. BUS. LAW § 380-g

73.     Plaintiff realleges and incorporates by reference all preceding allegations.

74.     Section 380-g of the NY-FCRA imposes additional requirements when items being reported by CRAs, like criminal records, are of public record. Criminal court records are

17

public records. Accordingly, N.Y. Gen. Bus. Law § 380-g requires a consumer reporting agency

which compiles and reports information on consumers which are matters of public record to:

> (a)  at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (b) maintain reasonable procedures designed to insure that whenever public record information is reported it is complete and up to date to the extent practicable. It shall be deemed a reasonable procedure for a consumer reporting agency to accurately report the status of public record information as of the date recorded in its files provided such information is updated on a regular basis.

75.     Defendants failed to provide consumers with notice, as required by N.Y. Gen. Bus.

Law § 380-g(a), at the time that they provided public record information to the user of such

consumer reports. As such, under N.Y. Gen. Bus. Law § 380-g(b), Defendants were required to

maintain reasonable procedures to ensure that the information sold to employers was complete

and up-to-date. Defendants failed to do so, in violation of NY-FCRA § 380-g.

76.     Defendants' violations were willful, rendering Defendants liable for actual

damages, punitive damages, and costs and reasonable attorneys' fees, in an amount to be

determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l. Alternatively, Defendants were

negligent, rendering Defendants liable for actual damages and costs and reasonable attorneys'

fees, pursuant to N.Y. Gen. Bus. Law § 380-m.

77.     As a result of Defendants' violations of N.Y. Gen. Bus. Law § 380-g, Ms.

Washington suffered damages including but not limited to: loss of employment income and

benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and

emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment

she was living in and, as a result, she was temporarily living with different friends and family for

over 21 months.

## COUNT IV
## <u>FAILURE TO MAINTAIN STRICT PROCEDURES</u>
### FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681k

78.     Plaintiff realleges and incorporates by reference all preceding allegations.

79.     At all times pertinent hereto, Defendants furnished information "for employment purposes and ... for that purpose compiled and reported items of information on consumers which are matters of public record and are likely to have an adverse effect upon [consumers'] ability to obtain employment," as set forth in FCRA § 1681k.

80.     As such, Defendants were required to comply with FCRA §§ 1681k(a)(1) or 1681k(a)(2). Defendants failed to provide Ms. Washington with the notice required by FCRA § 1681k(a)(1), when they provided public record information to the user of the report. Additionally, Defendants failed to maintain strict procedures, pursuant to FCRA § 1681k(a)(2), to ensure that the information they sold to the employer was complete and up-to-date. Defendants neither provided notice nor maintained strict procedures, and thus are in violation of FCRA § 1681k(a).

81.     Defendants' violations are willful, rendering Defendants liable for actual damages, punitive damages, and attorneys' fees in the amount to be determined by the Court pursuant to FCRA § 1681n. Alternatively, Defendants were negligent, rendering Defendants liable for actual damages and attorneys' fees pursuant to FCRA § 1681o.

82.     As a result of Defendants' violations of FCRA § 1681e(b), Ms. Washington suffered damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

## COUNT V
## CARCO'S FAILURE TO DISCLOSE LEGAL RIGHTS
### NY GEN. BUS. LAW § 380-f(b)(3)

83.    Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

84.    Section 380-f(b)(3) of the NY-FCRA requires that a consumer reporting agency shall, upon finding an item of error or an item which can no longer be verified:

> [C]learly and conspicuously disclose to the consumer his rights to make a request for notification and upon request of the consumer, promptly notify any person designated by the consumer who has received information regarding the item during the previous year that an error existed, and shall furnish such person with the correct information.

85.    Carco violated NY-FCRA § 380-f(b)(3) by failing to provide such notice to Ms. Washington when it sent her the April 26, 2013 Letter (*see* Exhibit C).

86.    Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and costs and reasonable attorneys' fees, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l. Alternatively, Carco was negligent, rendering Carco liable for actual damages and costs and reasonable attorney's fees, pursuant to N.Y. Gen. Bus. Law § 380-m.

87.    As a result of Carco's violations of N.Y. Gen. Bus. Law § 380-g, Ms. Washington suffered damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

## COUNT VI
## CARCO'S FAILURE TO DISCLOSE LEGAL RIGHTS
### FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i

88.   Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

89.   Sections 1681i(a)(6)(B)(iii) – (v) of the FCRA require that, upon the results of a reinvestigation, a consumer reporting agency must provide to a consumer in writing: a written notice to the consumer that:

> (iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available; (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and (v) a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

90.   Carco violated FCRA §§ 1681i(a)(6)(B)(iii) – (v) by failing to provide this written notice to Ms. Washington when it sent her the April 26, 2013 Letter (see Exhibit C).

91.   Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and attorneys' fees in an amount to be determined by the Court pursuant to FCRA § 1681n. Alternatively, Carco was negligent, rendering Carco liable for actual damages and attorney's fees pursuant to FCRA § 1681o.

92.   As a result of Carco's violations of FCRA § 1681e(b), Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

## COUNT VII
## CARCO'S FAILURE TO PROPERLY INVESTIGATE THE ERROR
### NY GEN. BUS. LAW § 380-f(a), (c)

93.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

94.     Section 380-f(a) of the NY-FCRA requires that, upon a consumer dispute, "the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous, and it shall promptly notify the consumer of the result of its investigation, its decision on the status of the information and his rights pursuant to this section."

95.     Carco violated NY-FCRA § 380-f(a) when, in the April 4, 2013 Letter (see Exhibit B), it shifted the burden of conducting an investigation away from itself, and placed that burden onto the consumer, Ms. Washington.

96.     Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and costs and reasonable attorneys' fees, in an amount to be determined by the Court pursuant to N.Y. Gen. Law § 380-l. Alternatively, Carco was negligent, rendering Carco liable for actual damages and costs and reasonable attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 380-m.

97.     As a result of Carco's violations of N.Y. Gen. Bus. Law § 380-g, Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

## COUNT VIII
## CARCO'S FAILURE TO PROPERLY INVESTIGATE THE ERROR
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i

98.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

99.     Sections 1681i(a)(1)(A) and 1681i(a)(2)(A) of the FCRA provide that the burden of re-investigating the accuracy of information contained in consumer reports rests with the CRA, and explicitly bars shifting that burden to the consumer seeking to correct the CRA's incorrect information.

100.     Carco violated FCRA §§ 1681i(a) – (v) when, in the April 4, 2013 Letter (see Exhibit B), it shifted the burden to conduct an investigation away from itself, and placed that burden onto the consumer, Ms. Washington.

101.     Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and attorneys' fees in an amount to be determined by the Court pursuant to FCRA § 1681n. Alternatively, Carco was negligent, rendering Carco liable for actual damages and attorneys' fees pursuant to FCRA § 1681o.

102.     As a result of Carco's violations of FCRA § 1681e(b), Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

**COUNT IX**
**CARCO'S FAILURE TO PROPERLY REMOVE**
**THE INCORRECT INFORMATION**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(5)**

103.    Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

104.    After a consumer reporting agency conducts an investigation and determines that disputed information is inaccurate, it must "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." FCRA § 1681i(a)(5)(A).

105.    Carco violated FCRA § 1681i(a)(5)(A) by failing to delete or appropriately remove the name of Jemik McGill from the investigative report despite knowing that the insertion of that name made the consumer report inaccurate. While an update was made to change "adverse" to "clear" upon the determination that Ms. Washington was erroneously linked with the open weapons possession cases, the otherwise unassociated name of Jemik McGill conspicuously still remains on Ms. Washington's report. *See* Exhibit D. Upon information and belief, this random and presumptively criminal name is still listed on Plaintiff Washington's Carco investigative report to be distributed to potential employers.

106.    Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and attorneys' fees in an amount to be determined by the Court pursuant to FCRA § 1681n. Alternatively, Carco was negligent, rendering Carco liable for actual damages and attorneys' fees pursuant to FCRA § 1681o.

107.    As a result of Carco's violations of FCRA § 1681e(b), Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to

24

reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

**COUNT X**
**CARCO'S FAILURE TO PROPERLY REMOVE**
**THE INCORRECT INFORMATION**
**N.Y. GEN. BUS. LAW § 380-f**

108.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

109.     After a consumer reporting agency conducts an investigation and determines that the disputed information is inaccurate or that it can no longer be verified, the CRA must "promptly expunge the item and otherwise correct the file." NY-FCRA § 380-f(b)(1).

110.     Carco violated NY-FCRA § 380-f(b)(1) by failing to delete or appropriately expunge the name of Jemik McGill from the consumer report. While an update was made to change the status from "Adverse" to "Clear" after the reinvestigation showed that Ms. Washington was erroneously linked with the open weapons possession cases, the name of Jemik McGill conspicuously still remains on Ms. Washington's report. Upon information and belief, this random and presumptively criminal name is still listed on Plaintiff Washington's Carco investigative report to be distributed to potential employers.

111.     Carco's violations were willful, rendering Carco liable for actual damages, punitive damages, and costs and reasonable attorneys' fees, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l. Alternatively, Carco was negligent, rendering Carco liable for actual damages and costs and reasonable attorney's fees, pursuant to N.Y. Gen. Bus. Law § 380-m.

112.    As a result of Carco's violations of N.Y. Gen. Bus. Law § 380-g, Ms. Washington

suffered damages including, but not limited to: loss of employment income and benefits, damage

to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms.

Washington's loss of employment also forced her to lose the apartment she was living in and, as a

result, she was temporarily living with different friends and family for over 21 months.

**COUNT XI**
**CARCO'S KNOWINGLY REPORT OF INACCURATE INFORMATION**
**N.Y. GEN. BUS. LAW § 380-j(a)(3)**

113.    Plaintiff realleges and incorporates by reference all preceding allegations of law

and fact.

114.    NY-FCRA § 380-j(a)(3) provides that "[n]o consumer reporting agency shall

report or maintain in the file on a consumer information . . . which it has reason to know is

inaccurate."

115.    Carco violated § 380-j(a)(3) of the NY-FCRA by representing that in reporting

Ms. Washington's alleged criminal records it had conducted a name and date of birth match

through the report's assertion that,. *See* Exhibit A, March 23, 2013 Report ("RECORD

MATCHES ON THE FOLLOWING: Name, DOB"). This statement appearing in Carco's

investigative report is facially and patently inaccurate.

116.    Carco's violations were willful, rendering Carco liable for actual damages,

punitive damages, and costs and reasonable attorneys' fees, in an amount to be determined by the

Court pursuant to N.Y. Gen. Bus. Law § 380-l. Alternatively, Carco was negligent, rendering

Carco liable for actual damages and costs and reasonable attorneys' fees, pursuant to N.Y. Gen.

Bus. Law § 380-m.

117.     As a result of Carco's violations of N.Y. Gen. Bus. Law § 380-g, Ms. Washington suffered damages including, but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation, and other mental, physical, and emotional distress. Ms. Washington's loss of employment also forced her to lose the apartment she was living in and, as a result, she was temporarily living with different friends and family for over 21 months.

**WHEREFORE, for all aforementioned counts, Plaintiff seeks the following relief:**

A.  That the Court issue a declaratory judgment that the acts, policies, and practices complained herein are in violation of the  FCRA and the NY-FCRA;

B.  That the Court enjoin Defendants from continuing its acts, policies, and practices which violate the FCRA and the NY-FCRA;

C.  Directing Defendants to pay Plaintiff actual damages to make Ms. Washington whole for all of the earnings she would have received but for Defendants' unlawful conduct, including but not limited to wages, bonuses, and other lost benefits;

D.  Directing Defendants to pay Plaintiff punitive damages;

E.  Awarding Plaintiff reasonable attorneys' fees and costs pursuant to FCRA §§ 1681n and 1681o; and N.Y. Gen. Bus. Law §§ 380-l and 380-m;

F.  Awarding Plaintiff such interest as is allowed by law; and

G.  Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to FRCP 38(b), Plaintiff hereby demands a trial by jury.

Dated: March 25, 2015                    Respectfully submitted,
       New York, NY

                                         **YOUTH REPRESENT**


By:              /s/
           Michael C. Pope

           Michael C. Pope
           Alison Wilkey
           11 Park Place, Suite 1512
           New York, NY 10007
           Tel: (646) 759-8079
           Fax: (646) 217-3097
           Email: mpope@youthrepresent.org
                  awilkey@youthrepresent.org

           **AND**

           **BERANBAUM MENKEN LLP**


           Grace Cretcher

           Grace Cretcher
           John A. Beranbaum
           80 Pine Street, 33rd Floor
           New York, NY 10005
           Tel: (212) 509-1616
           Email: gcretcher@nyemployeelaw.com
                  jberanbaum@nyemployeelaw.com

           *Attorneys for Plaintiff*